UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD, as
Subrogee, a foreign corporation

        Plaintiff,

v.                                                                              Case No. 2:19-cv-14050-RLR

JOHNSON CONTROLS FIRE
PROTECTION LP, formerly known as
SimplexGrinnell LP, a foreign limited
partnership

        Defendant.

## DEFENDANT JOHNSON CONTROLS FIRE PROTECTION LP'S MOTION TO DISMISS NATIONAL FIRE'S AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b) (6), Defendant Johnson Controls Fire Protection LP f/k/a SimplexGrinnell LP respectfully moves this Court for entry of an order dismissing Plaintiff National Fire Insurance Company of Hartford's Amended Complaint for equitable subrogation, and in support states:

### I.   INTRODUCTION

National Fire Insurance Company of Hartford brings this equitable subrogation action against SimplexGrinnell for money it paid to the owners of the Marina Village at Grand Harbor Condominium (Tower 2) in Vero Beach Florida (the "Property"). National Fire alleges it paid over $700,000 to the Property when an employee of its insured, Empire Roofing Company Southeast, LLC, stepped on a piece of CPVC fire sprinkler pipe in an attic, crushing the pipe and causing it to rupture. *See* Amended Complaint at ¶¶ 11, 22, ECF No. 27. National Fire further alleges that

1

through its "regular inspections and testing," SimplexGrinnell should have discovered the pipe had been weakened by materials used during construction of the building and installation of the fire-sprinkler system. *Id.*, ¶¶ 12-15.

National Fire's Amended Complaint should be dismissed because: (1) equitable subrogation is not an independent cause of action, and National Fire has not asserted any underlying claim on behalf of Marina Village; and (2) even if National Fire had plead an underlying claim, its subrogor Marina Village has no viable tort or contract claim against SimplexGrinnell through which National Fire seek damages against SimplexGrinnell. Since no amount of re-pleading can correct these fundamental flaws, this Court should dismiss National Fire's Amended Complaint with prejudice.

## II.     FACTUAL BACKGROUND

On October 1, 2008, SimplexGrinnell contracted with Marina Village to inspect and test specific components of the Property's fire sprinkler system. *See* Contract at 2-3, attached hereto as **Exhibit A**. The Contract does not require SimplexGrinnell inspect, diagnose, or otherwise evaluate the fire-sprinkler system's CPVC pipes.[1] *Id.* Additionally, the Contract contains an "evergreen clause," a provision automatically renewing the contract following completion of the initial term unless canceled in writing. *Id.* at 4. National Fire correctly alleges that SimplexGrinnell was responsible for conducting certain "annual inspections and testing of the fire-protection system at all times relevant to National Fire's claims. *See* Am. Compl. At ¶ 14. Accordingly, the Contract was the operative agreement for SimplexGrinnell's work at the Property prior to the incident and defines the full scope of both SimplexGrinnell and Marina Village's rights and obligations.

---

[1] Nor could it given that the CPVP components of a residential fire-sprinkler systems are typically located behind drywall or other structural elements, as was the case with Marina Village.

On or about February 29, 2016, an employee of Empire Roofing was performing work in the attic of Unit 402 of the Property. *See* Am. Compl., ¶¶ 10-11. While doing so, the employee stepped on a plastic CPVC fire-sprinkler pipe, rupturing the pipe and releasing water throughout the building. *Id.* National Fire claims that the pipe was "improper" and had been "weakened."[2] *Id.*, ¶ 15. National Fire claims that "[t]hrough its regular inspections and testing," SimplexGrinnell should have notified the owner of "any weakened or improper piping." *Id.* at ¶ 14.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, which if accepted as true, states a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the as-pleaded facts permit only the possibility of misconduct, then National Fire has failed to state a sufficient claim. *Id.*

The Complaint "must contain allegations addressed to each material element 'necessary to sustain a recovery under some viable legal theory.'" *Napier ex rel. Napier v. Florida Dept. of Corr.*, No. 09-CV-61158, 2010 WL 2327442 at *2 (S.D. Fla. June 16, 2010) *citing Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 684 (11th Cir. 2001). "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Absent the necessary "factual content," claims of "unadorned, the-defendant-unlawfully-harmed-me

---

[2] Although National Fire cites to several items that it alleges can cause CPVC pipe to weaken, nowhere in its Amended Complaint does it allege that the CPVC pipe involved in this incident was exposed to any of those items.

3

accusation[s]" simply cannot "empower [National Fire] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 678, 689.

Although assessment of a Rule 12 motion is typically limited to the face of the pleadings, under certain circumstances, a document that is not formally incorporated by reference or attached to the complaint, but attached to a motion to dismiss, may still be considered without converting the motion into one for summary judgment as long as the document is central to the National Fire's claims and undisputed as to authenticity. *Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n*, 177 Fed. Appx. 52, 53 (11th Cir. 2006). Furthermore, courts consider contractual materials not attached to the complaint where the claim arises from a contract or other written agreement between the parties. *Richardson v. Route 1, Inc.,* No. 8:12-cv-2888-T-33TBM, 2103 WL 2396053 at *2 (M.D. Fla. May 31, 2013) (consideration of contract attached to motion to dismiss).

Here, National Fire states that SimplexGrinnell conducted annual inspections and testing of the fire protection system at Marina Village, and it was through these inspections that SimplexGrinnell's purported duty to warn Marina Village about the "weakened" CPVC pipe arose. *See* Am. Compl. at ¶ 14. Any duty SimplexGrinnell possessed to inspect and test the fire sprinkler system at the Property is based solely on SimplexGrinnell's Contract with Marina Village. As such, this Court may consider the Contract when analyzing the instant motion to dismiss.

### III. ARGUMENT

#### A. National Fire Fails to Plead Facts Sufficient to Proceed in Equitable Subrogation

As a threshold matter, National Fire does not allege sufficient facts to assert the bare elements of equitable subrogation, the common law doctrine it asserts as its sole cause of action. Equitable subrogation allows a party that has made a payment on behalf of another party to assert a claim for the recovery of those damages from a third party, requiring that : (1) the subrogee made

4

the payment to protect its own interest; (2) the subrogee did not act as a volunteer in making the payment; (3) the subrogee was not primarily liable for the debt; (4) the subrogee paid off the entire debt; and (5) subrogation would not work any injustice to the rights of the third party. *See Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999). Here, National Fire fails to allege that it was not primarily liable for the debt. Rather, it makes the opposite assertion by stating that "[w]hile performing work at the project, an employee of Empire Roofing was walking on the joists in an attic above Unit 402. While doing so he stepped onto a fire sprinkler system pipe. The pipe ruptured, causing widespread damage throughout the building." *See* Am. Compl. at ¶ 11; *see also Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs, Inc.,* 903 So. 2d 251, 255 (Fla. 3d DCA 2005) (finding equitable subrogation claim could not stand where plaintiff failed to allege it was not primarily liable, and pleadings indicated otherwise). Accordingly, National Fire's Amended Complaint should be dismissed.

### B. National Fire Does Not Assert an Underlying Cause of Action Against SimplexGrinnell

Even if Natation Fire had adequately alleged its standing to proceed under principles of equitable subrogation, its Amended Complaint still fails to state a claim upon which relief may be granted. Equitable subrogation is not an independent cause of action, but instead is simply the substitution of one person in place of another with reference to a lawful claim or right sounding in principles of equity. *See, e.g., Dade County School Bd.*, 731 So.2d at 646. As a principle of law, equitable subrogation only provides the subrogee standing to bring a claim for injury that would otherwise vest in the subrogor. That is, it is merely the vehicle through which National Fire may assert claims that Marina Village could have itself brought against SimplexGrinnell. Just as with contractual subrogation, an equitable subrogee merely stands in the shoes of its subrogor, and can only assert those claims the subrogor would have against a third party. *Id.* at 647 (Fla. 1999) ("[I]f

the subrogor has no rights or priorities against a specified third party, then the subrogee has nothing to inherit as against that third party."); *Welch v. Complete Care Corp.*, 818 So. 2d 645, 648 (Fla. 2d DCA 20020) (referring to the rights inherited by the subrogee as "non-existent rights.")

As such, National Fire must still assert a viable claim, whether sounding in tort or contract, against SimplexGrinnell. *See, e.g., Assicurazioni Generali S.P.A. v. Facey Commodity Co., Inc.*, No. 10-20736-CIV-LENARD/O'SULLIVAN, 2012 WL 12865254, at *2 (pleading equitable subrogation based on several underlying claims, including breach of contract, negligence, negligent supervision, and breach of implied bailment). National Fire has failed to do so here. Aside from asserting Marina Village has now released SimplexGrinnell from liability in an effort to cure this glaring deficiency from its original complaint, National Fire's Amended Complaint brings nothing more to the table than its original complaint, previously dismissed for failure to state a claim. *See* Order Adopting Magistrate's Report and Recommendation, ECF No. 25. By not properly pleading an underlying cause of action that Marina Village would have against SimplexGrinnell, National Fire fails to state a claim.

i. National Fire has no viable tort claims against SimplexGrinnell

National Fire's Amended Complaint is a near mirror image of its previously dismissed Complaint (ECF No. 1). Indeed, the bulk of National Fire's allegations center on the duty owed by SimplexGrinnell to Marina Village to adequately inspect the fire-sprinkler system and alert Marina Village of the presence of "improper and unsafe fire protection piping." *See, e.g.* Am. Compl. at ¶¶ 14, 15, 17, 18. But these allegations relate to the causes of action in tort previously raised by National Fire and subsequently dismissed by this Court. Even if National Fire (as subrogee) had the right to stand in the shoes of Marina Village (as subrogor), Marina Village simply does not have a viable tort claim against SimplexGrinnell independent of the Contract governing the relationship between those two entities. *See* Report and Recommendation at ¶ 8

("Applying the Independent Tort Doctrine to this case, this Court finds that National Fire does not plead a negligence cause of action that is separate from and independent of the contractual relationship."). As the Contract continues to define the scope of the relationship between Marina Village and SimplexGrinnell, National Fire's Amended Complaint again fails to state a claim and should be dismissed.

      ii.    <u>National Fire has not plead a breach of contract claim.</u>

Because Magistrate Maynard and Judge Rosenberg correctly determined that the Independent Tort Doctrine prevents Marina Village from asserting a tort claim against SimplexGrinnell, Marina Village's only arguable theory of recovery would arise under its Contract with SimplexGrinnell. Yet National Fire has not pled a breach of contract claim. Instead, National Fire states that SimplexGrinnell conducted annual inspections and testing of the fire protection system at Marina Village, and it was through these inspections that SimplexGrinnell's purported duty to warn Marina Village about the "weakened" CPVC pipe arose. *See* Am. Compl. at ¶¶ 14-18. But the Contract defines the full scope of both SimplexGrinnell and Marina Village's rights and obligations, and even a cursory review of the Contract reveals no requirements that SimplexGrinnell inspect, observe, or otherwise test the structural integrity of the fire sprinkler system's integrated CPVC pipes. *See* Contract at p. 2-3. As National Fire has chosen not to assert a claim for breach of contract, the Amended Complaint fails to state a claim upon which relief may be granted.

      iii.    <u>Any of National Fire's claims are subject to the terms and conditions of the Contract</u>

Presumably, National Fire's decision not to directly assert a claim for breach of contract arises from the simple fact that the terms and conditions of the Contract bar its subrogor Marina Village from asserting such a claim. *See Dade County,* 731 So. 2d at 647 ("[I]f the subrogor has

no rights or priorities against a specified third party, then the subrogee has nothing to inherit as against that third party."); *see also Welch*, 818 So. 2d at 648 (referring to the rights inherited by the subrogee as "non-existent rights."). In its contract with SimplexGrinnell, Marina Village expressly waived any right to pursue an action in subrogation against SimplexGrinnell. Directly above Marina Village's signature, in bold letters, the Contract provides:

> **"ATTENTION IS DIRECTED TO THE LIMITATION OF LIABILTY, WARRANTY, INDEMNITY AND OTHER CONDITIONS CONTAINED IN THIS AGREEMENT."**

*See* Contract at pp. 4-5, ¶ 6.

Directly below this bolded language, these terms and conditions state in no uncertain terms that "[Marina Village] agrees to look exclusively to [Marina Village's] insurer to recover for injuries or damage in the event of any loss or injury and that [Marina Village] releases and waives all right of recovery against [SimplexGrinnell] by way of subrogation." Thus, regardless of the identity of the party attempting to assert subrogation rights against SimplexGrinnell, Marina Village's contractual agreement to waive all subrogation rights arising forecloses any such claim. *See Fairchild ex rel State Farm Fire & Cas. Ins. Co. v. W.O. Taylor Comm. Refrigeration & Elec. Co.*, 403 So. 2d 1119, 1120 (Fla. 5th DCA 1981) ("It is well established that parties to a contract may mutually agree that one party will obtain insurance as part of the bargain, to shift the risk of loss from both of them to the insurance carrier. If loss occurs, they are deemed to have agreed to look solely to the insurance, without regard to which party was negligent, and subrogation is not allowed."); *see also Rose v. ADT Sec. Servs, Inc.*, No. 2001-CA-0883, 2008 WL 6205775 (Fla. 2d Jud. Cir. May 28, 2008) *aff'd on other grounds* 989 So. 2d 1244 (Fla. 1st DCA 2008) (dismissing subrogation claim due to the waiver of subrogation provision in fire alarm services contract).

The damages National Fire seeks to recover in this lawsuit as an equitable subrogee of Marina Village's rights are precisely those damages its subrogor Marina Village previously agreed to allocate to its insurer and waive against SimplexGrinnell. *See Rose*, 2008 WL 620775 ("Florida law recognizes that the risk of loss can be shifted from a contractor to an insurance carrier. If a loss occurs, the property owner is deemed to have agreed to look solely to its insurance, without regard to which party was negligent, and subrogation is not allowed."). As subrogee, National Fire maintains no greater rights than Marina Village, and there are no principles of equity that would command a different result. Indeed, as discussed above, equitable subrogation does not create new rights, but merely assigns claims under principles of equity rather than contract. Accordingly, the Court should grant SimplexGrinnell's motion and dismiss National Fire's equitable subrogation claim with prejudice.

Even if the Contract did not stand as an absolute bar to National Fire's claims under equitable subrogation—it does—the Contract's limitation of liability caps National Fire's damages to the contract price—$2,188.14. As alleged in the Amended Complaint, National Fire seeks damages from SimplexGrinnell in excess of $700,000 resulting from Empire Roofing's employee smashing a plastic pipe while walking about in a condominium's crawl space. *See* Am. Compl. at ¶¶ 11, 22. Even accepting National Fire's allegations as true for purposes of this motion, the Contract expressly limits the recovery available to Marina Village, and thus to National Fire as subrogee:

> It is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from failure on the part of [SimplexGrinnell] to perform any of its obligations under this Agreement. Accordingly, [Marina Village] agrees that, [SimplexGrinnell] shall be exempt from liability for any loss, damage or injury arising directly or indirectly from occurrences, or the consequences therefrom, which the equipment or service was designed to detect or avert. Should [SimplexGrinnell] be found liable for any loss. Damage or injury arising from a failure of the equipment or

> service in any respect, [SimplexGrinnell's] liability shall be limited to an amount equal to the Agreement price. . .

*See* Contract, pp. 4-5, ¶ 6.The Contract further provides:

> If [Marina Village] desires [SimplexGrinnell] to assume greater liability, the parties shall amend this Agreement by attaching a rider setting forth the amount of additional liability and the additional amount payable by [Marina Village] for the assumption by [SimplexGrinnell] of such greater liability, provided however that such rider shall in no way be interpreted to hold [SimplexGrinnell] as an insurer.

*Id*. SimplexGrinnell and Marina Village never executed any such rider. Nor does National Fire allege otherwise.

In *Hawley Ins. Co. v. Pallett Consultants Corp*., No. 06-61763-Civ., 2009 WL 1011722 at *3, 7-9 (S.D. Fla. July 1, 2009), the court held that a nearly identical clause in another SimplexGrinnell service contract limiting damages to the contract price of $875 and provided the same option for a rider was enforceable. ("[T]he law is clear that limitation-of-liability clauses are enforceable and there is no reason why it should not be enforced in this case"). Courts throughout Florida have upheld similar provisions. "It is well settled that … limitation of damages provisions are valid and enforceable… ." *Rollins, Inc. v. Heller*, 454 So. 2d 580, 583 (Fla. 3d DCA 1984). When clear and unequivocal, such provisions are applicable to claims for negligence, breach of contract, breach of express and implied warranties, and gross negligence. *See Rollins*, 454 So. 2d at 583-84 (gross negligence); *Rose v. ADT Sec. Servs, Inc*., 989 So. 2d 1244 (Fla. 1st DCA 2008) (breach of warranties and negligence); *Factory Ins. Assoc. v. Amer. Dist. Telegraph Co.,* 277 So. 2d 569, 570 (Fla. 3d DCA 1973) (breach of contract, breach of express and implied warranties, and negligence); *L. Luria & Son, Inc. ex rel. Fireman's Fund Ins. Co. v. Alarmtec Int'l Corp.,* 384 So. 2d 947, 948 (Fla. 4th D.C.A. 1980) (breach of contract, breach of implied warranties, and negligence).

Because Florida courts consistently enforce nearly identical limitation provisions in service contracts, Marina Village's recovery against SimplexGrinnell would be limited to $2,188.14. Thus, even if this Court were to find that National Fire has asserted a viable breach of contract claim through its allegations of equitable subrogation, National Fire's recoverable damages should be limited to $2,188.14.

## IV.   CONCLUSION

National Fire has failed to plead it has standing to bring a claim on behalf of Marina Village. Moreover, even if it could step into the shoes of Marina Village as subrogee, National Fire has failed to plead any viable claims belonging to subrogor Marina Village against SimplexGrinnell. Accordingly, SimplexGrinnell's motion should be granted and the Amended Complaint dismissed with prejudice.

Respectfully submitted,

/s/ *Eric S. Boos*
Eric S. Boos
Florida Bar No. 107673
SHOOK, HARDY & BACON L.L.P.
Citigroup Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131-4332
Telephone: 305.358.5171
Facsimile: 305.358.7470
eboos@shb.com

*Attorney for Defendant*
*Johnson Controls Fire Protection LP*
*f/k/a SimplexGrinnell LP*