UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:19-14050-ROSENBERG/MAYNARD

NATIONAL FIRE INSURANCE COMPANY
OF HARTFORD,

    Plaintiff,

v.

JOHNSON CONTROLS FIRE PROTECTION LP,
*formerly known as SimplexGrinnell LP, a foreign limited partnership*,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss the Amended Complaint. Mot., DE 28. The motion is ripe for review. *See* Pl. Resp., DE 29; Def. Reply, DE 30. In addition, the Court heard oral argument on the Motion on August 8, 2019. DE 33. At the Motion Hearing, the parties and the Court agreed that the Amended Complaint should be dismissed with leave to amend. The Court informed the parties that a written order would follow to document the Court's analysis of the Amended Complaint.

    **I.**    **BACKGROUND**

This dispute arises out of more than $700,00 worth of water damage caused to the building project known as Marina Village at Grand Harbor Tower II in Vero Beach, Florida ("Marina project"). *See* Am. Compl., DE 27, 2-4. The damage occurred when Plaintiff National Fire Insurance Company's ("National Fire") insured, Empire Roofing ("Empire"), was performing work on the Marina project. *Id.* While working on the Marina project, one of Empire's employees stepped on a fire sprinkler system pipe, which ruptured, causing substantial water damage. *Id.*

Plaintiff alleges that the rupture occurred because the fire sprinkler system utilized PVC[1] piping, which "had been significantly weakened." *Id.* Plaintiff National Fire then paid the full restoration costs of the damage, on behalf of their insured, Empire, to Marina, and obtained a release of liability from Marina. *Id.*

National Fire has alleged through its first Complaint and its Amended Complaint that Defendant Johnson Controls ("Johnson"), formerly known as SimplexGrinnell, was responsible for the damage to the Marina project by virtue of Johnson's work conducting "annual inspections and testing of the fire protection system" at the Marina project. *See id.*; Compl., DE 1. As a result, Johnson allegedly owes National Fire damages. *See id.* According to the Amended Complaint, "Johnson Controls knew or should have known that the use of the PVC piping in fire protection application posed a variety of risks to property and human life, but failed to notify the building owner despite a clear duty to do so." *Id.* at 3.

Accordingly, on February 13, Plaintiff National Fire filed this action against Defendant Johnson, alleging claims for negligence and contribution. Compl., DE 1. Defendant then moved to dismiss the Complaint for failure to state a claim. DE 10. The Motion was briefed, *see* Pl. Resp., DE 12; Def. Reply, DE 15, and referred to Magistrate Judge Maynard for a Report and Recommendation, DE 11.

In the first Motion to Dismiss, Defendant Johnson Controls argued that the Complaint had not properly alleged that Defendant owed any duty of care to Plaintiff. DE 10, 5. From Defendant's perspective, because Johnson Controls "could not possibly owe a duty to a party it had no knowledge of and could have reasonably foreseen would *step on and crush a plastic* fire sprinkler

---

[1] Defendant states that it was CPVC piping. Mot., DE 28, 1.

pipe, National Fire instead states SimplexGrinnell owed a duty to 1) the owners of Marina Village and 2) members of the public in general." *Id.* at 6 (emphasis in original). In addition, Defendant argued that "Florida law does not recognize a right to statutory contribution in a breach of contract case." *Id.* at 8. As a result, Defendant contended that Plaintiff could not maintain a contribution action against Defendant, because Defendant's relationship with Marina (the victim of the *tort* that Defendant and Plaintiff were alleged to have committed jointly) is based on a contract. *Id.*

In its response to this first Motion to Dismiss, Plaintiff argued that it had properly alleged a subrogation action, whereby National Fire "stepp[ed] into the shoes of the Marina Village." Pl. Resp., DE 12, 3; *see also id.* ("National Fire holds the same rights – no greater and no less – than the underlying plaintiff [Marina]."). Plaintiff's Response did not directly address Defendant's argument that Defendant owed no duty to *Empire*, and instead, repeated the Complaint's allegations of Defendant's alleged wrongdoing *as to Marina*. *See id.* ("By stepping in the shoes of Marina Village…"); *id.* at 4 ("National Fire paid off the entire debt in order to restore Marina Village…"); *id.* at 5 ("Johnson Controls owed a duty of reasonable care to Marina Village."); *id.* at 6 ("National Fire now 'stands in the shoes' of Marina Village…").

Based on this briefing, Judge Maynard issued her Report and Recommendations (the "Report"), that the Motion to Dismiss be granted and that the Complaint be dismissed. Report, DE 18. First, Judge Maynard found that National Fire could not plead a contribution claim against Johnson, because a "tortfeasor only may seek contribution from another tortfeasor for <u>tort</u> damages. Here, however, there is a legal bar that protects Johnson Controls from being sued for the tort of negligence. . . . Simply put, a plaintiff may not pursue a tort theory of relief where a contract created the duty to act." *Id.* at 4 (emphasis in original). In this case, the victim's claims

3

against Johnson could only arise in contract pursuant to the independent tort doctrine. *See id.* As a result, because a claim for contribution relies on the commission of a *tort* by the joint tortfeasors, Plaintiff could not proceed with its contribution claim against Johnson. As Plaintiff has acknowledged, "National Fire holds the same rights – no greater and no less – than the underlying plaintiff [Marina]." Resp., DE 12, 3. Marina could not proceed in a tort action against Johnson Controls, so neither can National Fire. *See generally* Report, DE 18, 3-6.

Judge Maynard then considered whether National Fire could plead a claim for negligence against Johnson. *Id.* at 6. "As this Court explain[ed] above, a contract defines the duty of care that Johnson Controls owed to Marina Village. Consequently, National Fire may not frame Johnson Controls' performance of its contractual duties in negligence terms." *Id.* at 7. Consequently, the Report also recommended dismissing National Fire's negligence claim. *Id.* Notably, Judge Maynard stated that she "under[took] the above Independent Tort Doctrine analysis on the assumption that National Fire has the right of subrogation to stand in the shores of *Marina Village* to sue Johnson Controls for negligence." *Id.* at 8 (emphasis added).

The Court adopted the Report on June 14, but granted Plaintiff leave to amend "to allege any other claims Plaintiff may have." Order, DE 25, 2. Plaintiff's Amended Complaint followed, alleging one count for equitable subrogation. Am. Compl., DE 27. Defendant promptly moved to dismiss the Amended Complaint, arguing that "(1) equitable subrogation is not an independent cause of action, and National Fire has not asserted any underlying claim on behalf of Marina Village; and (2) even if National Fire had plead an underlying claim, its subrogor Marina Village has no viable tort or contract claim against [Defendant]". Mot., DE 28, 2.

## II. MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555 (citation omitted), and must provide sufficient facts to "give the defendant fair notice of what the … claim is and the grounds upon which it rests," *id.* Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, the "plaintiff's factual allegations are accepted as true. . . . However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. DISCUSSION

In its Amended Complaint, Plaintiff has alleged one count of equitable subrogation. *See* Am. Compl., DE 27.

> Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. As a result of equitable subrogation, the party discharging the debt stands in the shoes of the person whose claims have been discharged and thus succeeds to the right and priorities of the original creditor.

*Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999) (citations omitted).

> Two types of subrogation exist in Florida: conventional and equitable. Conventional subrogation … arises from a contract between parties. . . Equitable subrogation . . . is an equitable remedy rooted in the legal consequence of the actions and relationship between the parties. The "policy behind the doctrine is to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge." The doctrine places "one party into the shoes of another so that the substituting party retains the rights, remedies, or securities that would otherwise belong to the original party."

*Columbia Bank v. Turbeville*, 143 So. 3d 964, 967–68 (Fla. Dist. Ct. App. 2014) (citations omitted).

To begin with, the Court notes that Plaintiff's Amended Complaint itself does not make clear whose rights and remedies National Fire would like to assume. At the Motion hearing, Plaintiff's counsel clarified that the Amended Complaint was intended to plead a claim of equitable subrogation whereby National Fire steps into the shoes of its insured, Empire Roofing. With this quandary resolved, the Court proceeds in its analysis on the assumption that Plaintiff is proceeding with the rights and remedies available to its insured, *Empire Roofing*, and <u>not</u> *Marina Village*. At the hearing, Plaintiff's counsel also represented that the Amended Complaint was intended to plead

Empire Roofing's *negligence* claim against Johnson Controls. With this clarity, the Court finds that the Amended Complaint is still deficient and must be repled.

As articulated above, equitable subrogration is not a standalone claim and must be pled with an underlying cause of action that the subrogor (Empire) has against the Defendant (Johnson Controls). Accordingly, the Amended Complaint must be repled to include the underlying negligence claim. The Court <u>amends</u> its prior Order Adopting Judge Maynard's Report, DE 25, to make clear that Plaintiff's claim for negligence, as pled in the first Complaint, was reviewed on the understanding that Plaintiff was proceeding with the rights and remedies available to *Marina Village*. Now that it is clear that Plaintiff is proceeding with the rights and remedies available to *Empire Roofing*, the Court will permit Plaintiff to file a Second Amended Complaint to plead negligence, *from the perspective of Empire Roofing <u>only</u>*.

In drafting a Second Amended Complaint, the Plaintiff must clearly set forth the elements of a negligence claim and the factual allegations to satisfy each of those elements, which the current Amended Complaint does not do. In particular, the Plaintiff must address whether Johnson Controls owed a duty to Empire Roofing as a matter of law. In addition, the Court directs Plaintiff to Defendant's *first* Motion to Dismiss, DE 10, which highlights a number of the hurdles that Plaintiff faces in repleading.[2]

---

[2] As Defendant explained:

> Here, National Fire's negligence claim requires the Court to make multiple, incredible inferential leaps in order to land at the possibility of liability for SimplexGrinnell: 1) SimplexGrinnell had a duty, or even an opportunity to discover allegedly weakened pipe concealed in an attic space during the course of its inspections; 2) SimplexGrinnell should have warned the Property owner about the weakened pipe; 3) the property owner would have told National Fire's insured (and others that were about to do work in the concealed attic space where the pipe was located) about the weakened nature of the pipe; and 4) National Fire's insured's employee would not have stepped on that pipe (purposefully or accidentally) during the course of his work. None of these inferences are specifically alleged in National Fire's Complaint and there are certainly no facts that would allow

## IV. CONCLUSIONS

For all of the foregoing reasons, the Court finds that Plaintiff has not stated a claim on which relief can be granted. Consistent with the Court's pronouncement at the Motion hearing, the Court grants Plaintiff a final opportunity to amend its complaint for the limited purpose of pleading a negligence claim based on a duty Plaintiff alleges was owed by Defendant to Empire Roofing.

To the extent the Court's Order Adopting the Magistrate's Report granted dismissal of Plaintiff's claim for negligence with prejudice, the Court amends its prior Order to permit Plaintiff to allege negligence insofar as Plaintiff alleges it has a claim for negligence on behalf of its insured, *Empire Roofing*. Plaintiff may not attempt to allege negligence by Johnson Controls *as to Marina Village*, which is a claim barred by the independent tort doctrine.

It is hereby **ORDERED** and **ADJUDGED**:

1. The Motion to Dismiss, DE 28, is hereby **GRANTED** insofar as the Amended Complaint, DE 27, is **DISMISSED**.

2. The Amended Complaint, DE 27, is **DISMISSED** without prejudice.

3. Plaintiff is granted leave to amend to file a second amended complaint consistent with this Order. Plaintiff's second amended complaint is due by no later than **August 15, 2019**.

4. The Court's prior Order, DE 25, is **AMENDED** insofar as Plaintiff's claim for negligence is dismissed without prejudice so that Plaintiff may replead negligence, assuming the rights and responsibilities of Empire Roofing, as opposed to Marina Village.

5. Defendant's responsive pleading is due by **August 22, 2019**.

---

the Court to "infer more than the mere possibility of misconduct" on the part of SimplexGrinnell in performing its inspections for Marina Village. As a result, National Fire has failed to satisfy Rule 8's pleading requirements and, as a result, its negligence claim should be dismissed.

Def. Mot., DE 10, 7. Notably, Judge Maynard did not address Defendant's Rule 8 arguments in her Report on the first Motion to Dismiss, because she found that the independent tort doctrine alone warranted dismissal. *See* Report, DE 18, 7.

6. If Defendant responds by filing a third Motion to Dismiss, Plaintiff's response to the Motion to Dismiss is due by **August 29, 2019** and Defendant's reply in support of the Motion is due **September 5, 2019**.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 9th day of August, 2019.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record